## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF LOUISIANA

IN RE:                                                   CASE NUMBER: 19-10415

PAULA FABRE                                              CHAPTER 7

DEBTORS                                                  SECTION "A"

### MOTION FOR RELIEF FROM THE AUTOMATIC STAY

GMFS LLC, AS SERVICED BY SPECIALIZED LOAN SERVICING LLC ("Secured

Creditor"), a creditor holding a secured claim, represents that:

1.      This Court has jurisdiction over this proceeding and all parties hereto pursuant to

28 U.S.C., Sections 157 and 1334.

2.      On February 18, 2019, Paula Fabre (the "Debtor") filed with this Court a voluntary

petition under Chapter 7 of the Bankruptcy Code.

3.      Secured Creditor is the holder of a Note in the amount of $235,653.00, dated

January 21, 2015, executed by the Debtor, and secured by a mortgage, a copy of which is attached

hereto, recorded in Book 657 Page 517, in the records of Plaquemines Parish, Louisiana, affecting

the property more fully described in the mortgage filed into the record hereof, and which property

bears the municipal address of 110 Kimble Street, Belle Chasse, LA 70037.        (Exhibit "A")

4.      The Debtor's Statement of Intent provides for the surrender of the property.

5.      As of March 5, 2019, the Debtor's account had a delinquency in the amount of

$44,290.79 and the payoff amount was $228,007.17, plus interest accruing thereafter as shown by

the Affidavit attached as Exhibit "B."

6.      According to Debtor's Schedule A, the property's value is $240,000.00.

7. For the foregoing reasons, Secured Creditor requests that the automatic stay be lifted insofar as the property described in paragraph 3 above is affected thereby.

8. Specialized Loan Servicing, LLC services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtain a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant or Movant's successor or assignee. Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed. Movant is the original mortgagee or beneficiary or the assignee of the Mortgage/Deed of Trust.

WHEREFORE, GMFS LLC, AS SERVICED BY SPECIALIZED LOAN SERVICING LLC ("Secured Creditor") prays that the Court enter an order granting relief described as follows:

1. Termination of the automatic stay imposed by 11 USC §362 as to the estate of the Debtor so as to allow Secured Creditor to enforce any and all rights it has with respect to the property described in paragraph 3 above via state court foreclosure proceedings or otherwise; and

2. That any order remain in effect regardless of conversion to another Chapter; and/or

3. For such other and further relief to which Secured Creditor may be entitled.

**THE SUNDMAKER FIRM, L.L.C.**

/s/ *Earl F. Sundmaker, III*
EARL F. SUNDMAKER, III (#24226)
GREGORY J. WALSH (#25921)
1027 Ninth Street
New Orleans, LA 70115
Telephone: (504) 568-0515
Fax: (504) 568-0519
trey@sundmakerfirm.com
**Attorneys for Secured Creditor**

**EXHIBIT A**

# NOTE

LOAN# [redacted]                                    MIN# [redacted]

January 21st, 2015          GRETNA                    LOUISIANA
[Date]                       [City]                    [State]

110 KIMBLE STREET   BELLE CHASSE, LA 70037

[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 235,653.00           (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  GMFS, LLC, A LIMITED LIABILITY COMPANY

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      3.375           %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.   PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1st        day of each month beginning on    March 1st
2015        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items  in the order described in the Security Instrument before Principal. If, on     February 1st, 2045                   ,           , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  7389 Florida Boulevard, Suite 200A, Baton Rouge, LA
70806                                        or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $  1,041.81

**4.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use  my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the  reduction will be treated as a partial Prepayment.

GCC-3213newla-1 (12/14)                          Page 1 of 3                          *Effective 1/21/2015*

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of ___15___ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be ___4.000___ % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note, is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.



If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_Paula Lupe Fabre by Stephanie B.R. as attorney in fact_ (Seal)

PAULA LUPE FABRE, BY STEPHANIE B REEVES AS ATTORNEY IN FACT                -Borrower

_____ (Seal)
                                                        -Borrower

_____ (Seal)
                                                        -Borrower

_____ (Seal)
                                                        -Borrower

[Sign Original Only]

NMLSR ID:No.: 75368
NMLSR (L.O.) ID100788 (REYNALDO MIGUEL PICKWOAD JR)
Mortgage Loan Originator:URBAN HOUSING MORTGAGE& REALITY

'NE VARIETUR' for identification with a mortgage given before me on January 21, 2015

Notary qualified in    Jefferson                              Parish, Louisiana

GCC-3213newla-3 (11/14)                    Page 3 of 3                      Effective 1/21/2015

## ALLONGE TO NOTE

Loan Number: ███████
Borrower:          PAULA LUPE FABRE
Loan Amount: 235,653.00
Address:            110 KIMBLE STREET BELLE CHASSE, LA
                         70037
Loan Date:      01/21/2015
In Favor of      GMFS, LLC

*Pay to the order of*

_____

Without Recourse
GMFS, LLC

By:
Name:        David Jaureaux
Title:          Vice President, GMFS, LLC



Page 1 of 2

## Plaquemines Parish Recording Page

Dorothy M Lundin
Clerk of Court
PO Box 40
Belle Chasse, LA 70037
(504) 297-5180

**Received From :**
Attn: PEEVA MCMAHON
DEAN MORRIS
P. O. BOX 2867
MONROE, LA 71207-2867

**First MORTGAGOR**
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC

**First MORTGAGEE**
GMFS LLC

Index Type :   MORTGAGE                    File # : 2015-00004116

Type of Document : ASSIGNMENT

                                          Book :  673      Page :  1

Recording Pages :          2

## Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Plaquemines Parish, Louisiana

On (Recorded Date) : 10/22/2016

At (Recorded Time) : 11:05:18AM

Deputy Clerk

Doc ID

FILED
OCT 30 2015
DY. CLERK

EXHIBIT
C

Return To :   Attn: PEEVA MCMAHON

Do not Detach this Recording Page from Document Recorded:  2015-00004116  Seq: 1

ASSIGNMENT OF MORTGAGE

MIN # [redacted]                              MERS Phone: 1-888-679-6377

FOR VALUE RECEIVED, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), P.O. Box 2026, Flint, MI 48501-2026, as Nominee for GMFS, LLC, its successors and assigns, hereby assign and transfer to GMFS LLC, its successors and assigns, all its right, title and interest in and to a certain mortgage executed by PAULA LUPE FABRE, and bearing the date of this 21st of January, 2015 and recorded on the 22nd of January, 2015 in the office of the Recorder of Plaquemines Parish, State of Louisiana as Instrument No. 2015-00000263 in Book 657 at Page 557.

Signed on the _19_ day of _Oct_, 20_15_

                              MORTGAGE ELECTRONIC
                              REGISTRATION SYSTEMS, INC.
                              ("MERS"), as Nominee for GMFS LLC, its
                              successors and assigns

                              BY: _____
                              Jennifer L Doloron
                              Assistant Secretary

State of _NJ_
County of _Mercer_

On the _19_ day of _Oct_, 2015, before me, a Notary Public, personally appeared _Jennifer L Doloron_ to me known, who being duly sworn, did say that he or she is the _Assistant Secretary_ of Mortgage Electronic Registration Systems, Inc. ("MERS"), as Nominee for GMFS LLC, its successors and assigns and that said instrument was signed on behalf of said corporation.

                              _____
                              Notary Public

Preparer:  Dean Morris, L.L.P.
           1505 North 19th Street
           Monroe, LA 71201

                              WILMA MYKOW
                              NOTARY PUBLIC OF NEW JERSEY
                              My Commission Expires January 30, 2017
                              ID# 2410010

Book: 673 Page:  1 File Number: 2015-00004116 Seq: 2

## Plaquemines Parish Recording Page

Dorothy M Lundin
**Clerk of Court**
PO Box 40
Belle Chasse, LA 70037
(504) 297-5180

**Received From :**
AMERICAN TITLE AGENCY LTD
2132 GUARDIAN AVENUE
GRETNA, LA 70056

**First MORTGAGOR**
FABRE, PAULA L

**First MORTGAGEE**
GMFS LLC

**Index Type :**   MORTGAGE                    **File # :** 2015-00000263

**Type of Document :** MORTGAGE

**Recording Pages :**         13              **Book :**  657    **Page :**  517

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Plaquemines Parish, Louisiana

On (Recorded Date) : 01/22/2015

At (Recorded Time) : 2:45:52PM

Doc ID

Deputy Clerk

A TRUE COPY OF THE ORIGINAL
RECORDED IN THE PARISH OF PLAQUEMINES
IN M.O.B. _657_ Folio _517_
ON _January 22, 2015_
DY. CLERK OF COURT



FILED
OCT 3 0 2015
DY. CLERK

EXHIBIT
B

Return To :

Do not Detach this Recording Page from Original Document



AMERICAN TITLE AGENCY LTD
2132 GUARDIAN AVENUE
GRETNA, LA 70056
(504) 393-7004

State of Louisiana        [Space Above This Line For Recording Data]

LOAN#

PARCEL TAX ID

MIN

FHA Case Number

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on January 21st, 2015 , before me, the undersigned Notary, and in the presence of the undersigned witnesses, by PAULA LUPE FABRE , AN UNMARRIED WOMAN

("Borrower"), a person(s) of the full majority and resident(s) of PLAQUEMINES Parish, Louisiana, whose permanent mailing address is the Property Address stated below. This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS is a separate corporation acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the Mortgagee under this Security Instrument. The tax identification number of MERS is . MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. BOX 2026, Flint, MI Borrower declared and acknowledged that Borrower owes GMFS, LLC, A LIMITED LIABILITY COMPANY

a corporation organized and existing under the laws of THE STATE OF DELAWARE , and whose permanent mailing address is 7389 Florida Boulevard, Suite 200A, Baton Rouge, LA 70806 ("Lender"), the principal sum of TWO HUNDRED THIRTY FIVE THOUSAND SIX HUNDRED FIFTY THREE AND NO/100

Dollars (U.S. $ 235,653.00 ). This debt is evidenced by Borrower's note of even date paraphed "Ne Varietur" by me, Notary, for identification herewith and delivered to Lender ("Note"). The Note provides for monthly payments, with the full debt, if not paid earlier, due and payable on February 1st, 2045 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and attorneys' fees, together with all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced

LOUISIANA - Single Family - FHA SECURITY INSTRUMENT - 1/96

GCC - m1590-1LA (11/11)            Page 1 of 8

under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) the following described property located in     PLAQUEMINES             Parish, Louisiana:
SEE ATTACHED FOR LEGAL DESCRIPTION

which has the address of   110 KIMBLE STREET , BELLE CHASSE            [Street, City],
Louisiana    70037               ("Property Address");
         [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and hypothecate the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payments of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum of (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds".

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. section 2601 et seq. and implementing regulations, 12 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b) and (c) and any mortgage insurance premium installment that

GCC - m1590-2LA (11/12)            Page 2 of 8

Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for Items (a), (b) and (c).

3.  **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4.  **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any      delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the

GCC - 1590-3LA (06/10)                    Page 3 of 8

reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to the Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 30 DAYS           from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 30 DAYS         from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note     conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

GCC - 1590-5LA (08/10)                     Page 5 of 8

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and *not* an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** Following Lender's acceleration of payment, Lender may commence appropriate foreclosure proceedings under this Security Instrument under ordinary or executory process, under which Lender may cause the Property to be immediately seized and sold, with or without appraisal, in regular session of court or in vacation, in accordance with Applicable Law. For purposes of foreclosure under executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender for all sums secured by this Security Instrument, in principal, interest, costs, expenses, attorneys' fees and other fees and charges. To the extent permitted by Applicable Law, Borrower waives: (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sales; (b) the three days' delay as provided in Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; and (c) all other benefits provided under all other articles not specifically mentioned above. Borrower agrees that any declaration of fact made by an authentic act before a notary public and two witnesses by a person declaring such facts to be within his or her knowledge, will constitute authentic evidence of such facts for purposes of foreclosure under Applicable Law and for purposes of La. R.S. § 9:3504(D)(6) and La. R.S. § 9:5555.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

GCC - 1590-6LA (11/13)                                   Page 6 of 8

**19. Cancellation.** This Security Instrument shall remain in effect until canceled from the public records. Following the full payment and satisfaction of all sums secured by the Security Instrument, Borrower may request in writing that Lender provide Borrower with the original paraphed Note marked "paid in full", or with an appropriate mortgage cancellation certificate, for submission to the Clerk of Court or Recorder of Mortgages for the Parish of Orleans for the purpose of canceling this Security Instrument. Lender may delay providing Borrower with the canceled Note or with a mortgage cancellation certificate for up to 60 days following Lender's receipt of Borrower's request. Unless Lender agrees to cancel this Security Instrument from the public records, Borrower shall be responsible for doing so. Borrower shall pay all cancellation costs.

**20. Waiver of Homestead Rights.** Borrower (and Borrower's spouse to the extent applicable) waive any homestead rights and other exemptions from seizure with respect to the Property as may be provided under Applicable Law.

**21. Savings and Loan Association.** If Lender is a savings and loan association or thrift institution, the Note and all sums secured by this Security Instrument shall have the benefits of La. R.S. § 6:830.

**22. Future Advances.** Lender may, but shall not be required to, make advances to protect the security of this Security Instrument pursuant to paragraph 7. At no time shall the principal amount of the indebtedness secured by this Security Instrument, including advances pursuant to paragraph 7, exceed one hundred fifty percent (150%) of the original amount of the indebtedness set forth in the Note.

**23. Keeper.** Should the Property be seized as an incident to an action for recognition or enforcement of this Security Instrument by executory process, sequestration, attachment, writ of fieri facias, or otherwise, Borrower agrees that the court issuing such an order shall, if requested by Lender, appoint Lender, or any person or entity designated by Lender, as keeper of the Property as provided in La. R.S. §§ 9:5136, et. seq. Borrower agrees to pay the reasonable fees of such a keeper, which fees shall be secured by this Security Instrument as an additional expense.

**24. Late Charges.** Should Borrower fail to pay any installment of the principal and interest under the Note within 15 days of when due, Borrower agrees to pay Lender a late charge in an amount equal to 4.000

**25. Marital Status.** The marital status of Borrower is: UNMARRIED

**26. Additional Defined Terms.** As used in this Security Instrument, "Lender" additionally includes any successors and assigns of the Lender first named above, as well as any subsequent holder or holders of the Note, or of any indebtedness secured by this Security Instrument.

As used in this Security Instrument, "Note" additionally includes any substitute note or notes issued in replacement of Note first described above. It is Borrower's intent that this Security Instrument secure all renewals, extensions, refinancings, and modifications of the Note, to the extent provided by La. R.S. § 9:5390.

As used in this Security Instrument, "Lien" also means a privilege, mortgage, security instrument, assignment or other encumbrance. "Real Property" means "immovable property" as that term is used in the Louisiana Civil Code. "Condemnation" includes "expropriation" as that term is used in Louisiana law.

**27. Property Includes Servitudes and Component Parts.** The Property subject to this Security Instrument additionally includes servitudes and component parts now or hereafter attached to or incorporated into the Property.

**28. Full Ownership.** Borrower

**29. Modification of Section 13 of this Security Instrument.** Section 13 of this Security Instrument is hereby modified to the following extent. Each Borrower covenants and agrees that Borrower's obligations and liabilities under this Security Instrument and under the Note shall be joint, several and solidary with all other Borrowers and with each guarantor of the Note (if applicable). However, to the extent that the Property is community-owned immovable (real) property, and Borrower's spouse co-signs this Security Instrument, but does not co-sign the Note, Borrower's spouse is co-signing this Security Instrument for purpose of: (a) concurring with

GCC - 1590-7LA (11/13)     Page 7 of 8

the granting of this Security Instrument on the community-owned Property (to the extent required under Civil Code article 2347), without obligating the separate property of Borrower's spouse; and (b) waiving any homestead rights to which Borrower's spouse may be entitled under Applicable Law. Notwithstanding the fact that Borrower's spouse did not co-sign the Note, and further notwithstanding the language of Section 12 of this Security Instrument, Borrower's spouse is obligated for payment of the Note and all other sums secured by this Security Instrument to the extent of the spouse's community property interest, and to the extent that the Note is a community obligation.

**30. Additional Waivers.** Borrower hereby waives production of mortgage, conveyance and other certificates with respect to the Property, and relieves and releases the Notary Public before whom this Security Instrument was passed from all responsibility and liability in connection therewith.

**31. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider     ☐ Growing Equity Rider
☐ Graduated Payment Rider     ☐ Planned Unit Development Rider
☒ Other(s) [specify] Exhibit "A" Legal Description & Marital Status Rider
    Title Insurance Identification Rider & Power of Attorney

THUS DONE, AND PASSED, on this 21st day of January , 2015 in the presence of the undersigned Notary Public, and in the presence of the undersigned competent witnesses, who hereinto sign their names, along with Borrower, after being duly sworn and after reading of the whole.

Witnesses (as to all signatures):

_Dawn B Rome_
Print Name: **DAWN B. ROME**

_Mechelle Billiot_
Print Name: Mechelle Billiot

_Paula Lupe Fabre by Stephanie_
_B Reeves Attorney in fact_ _____(Seal)
PAULA LUPE FABRE, BY STEPHANIE B -Borrower
REEVES AS ATTORNEY IN FACT

_____ (Seal)
-Borrower

Shanna Patterson
URBAN HOUSING MORTGAGE AND REALTY GROUP
2439 MANHATTEN BLVD #209
NEW ORLEANS, LA 70058

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

NOTARY PUBLIC:
_Lawrence J. Genin_
Print Name:

Record and Return to:
GMFS LLC
ATTN: Linda Templet
7389 Florida Blvd., STE 200A
Baton Rouge, LA 70806

NMLSR ID: XXXXXXX
NMLSR (L.O.) ID: XXXX RINALDO MIGUEL PICKWOAD JR)
Loan Originator: URBAN HOUSING MORTGAGE& REALITY

GCC - 1590-8LA (11/13)        Page 8 of 8

### TITLE INSURANCE IDENTIFICATION RIDER

LOAN# ████

THIS TITLE INSURANCE IDENTIFICATION RIDER is made this 21st day of January , 2015 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Second Mortgage, Future Advance Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the Borrower(s) (the "Borrower") to secure Borrower's Note or Loan Agreement to GMFS, LLC, A LIMITED LIABILITY COMPANY

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

110 KIMBLE STREET BELLE CHASSE, LA 70037

*[Property Address]*

Name of Title Insurance Producer:

Address:

License Number:

Name of Title Insurance Underwriter:

Name of Attorney providing Title Opinion:

Bar Number of Licensed Attorney:

Title Underwriter:
FIRST AMERICAN TITLE INSURANCE COMPANY
Title Agent:
American Title Agency, LTD.
License #213140
2132 Guardian Avenue, Gretna, LA 70056
Title Exam by:
LAWRENCE J. GENN LSBA 06009 - LICENSE #134786
Reference to the above does not impose title insurance coverage nor create a lawyer-client relationship for any party to this act. All as per 22:513.1

████

TITLE INSURANCE IDENTIFICATION RIDER - LA
*TITLERIDER (1/12)r*

NAME, RESIDENCE AND MARITAL STATUS OF PRINCIPAL(S):

PAULA LUPE FABRE ████████████, a person of the full age of majority, resident of Plaquemines Parish, Louisiana, who declared unto me, Notary, that she has been married but four times, first to Robert Reeves from whom she was divorced, second to Jerry Graves from whom she was divorced, third to Robert Lambert from whom she was divorced, and fourth to Louis Rivarde from whom she was divorced and has not since remarried; whose mailing address is:

NAME AND RESIDENCE OF AGENT: ____

STEPHANIE B. REEVES, a person of the full age of majority, whose mailing address is: 110 Kimble Street, Belle Chasse, Louisiana 70037.

DESCRIPTION OF REAL ESTATE FORMING THE SUBJECT OF THIS POWER OF ATTORNEY:

ONE CERTAIN LOT OR PARCEL OF GROUND, together with all the buildings and improvements thereon, situated in the PARISH OF PLAQUEMINES, STATE OF LOUISIANA, in T 14 S, R 24 E, Section 2, bounded by Kimble Road, N.O. and L.C.R.R. (MP), now or formerly Hedge Hunt Realty Co. property and canal, designated as LOT 4, on a survey by Hugh B. McCurdy, Jr., Surveyor, dated July 18, 1988, a certified copy of which is annexed to another act before a Notary, and according to said survey, said Lot No. 4 commences at a distance of 427 feet from the intersection of Lot No. 4 and canal and measures thence 73 feet front on Kimble Road, the same width in the rear, by a depth of 200 feet between equal and parallel lines. ~~STREET~~ ~~PLF~~ ~~by SOR~~

The improvements thereon bear municipal no.: 110 KIMBLE ROAD, BELLE CHASSE, LOUISIANA 70037.

Being the same property acquired by Scott Dean Martin from Jared James Martin, by virtue of a Donation Inter Vivos dated February 12, 2008, filed for record at COB 1175, folio 660, Parish of Plaquemines, State of Louisiana.

WITNESSES:

Print Name: _Roy Da_____

Print Name: _Rachel D. Jazain_

CAUTION: The Notary cannot be a witness.

PRINCIPAL – PAULA LUPE FABRE

NOTARY PUBLIC
Steve Thompson, S6 J, US A, Military Notary
My commission expires: 15 March 2018

(SEAL)

### LEGAL DESCRIPTION AND MARITAL STATUS RIDER

#### EXHIBIT "A"

**LEGAL DESCRIPTION:**

ONE CERTAIN LOT OR PARCEL OF GROUND, together with all the buildings and improvements thereon, situated in the PARISH OF PLAQUEMINES, STATE OF LOUISIANA, in T 14 S, R 24 E, Section 2, bounded by Kimble Road, N.O. and L.C.R.R. (MP), now or formerly Hodge Hunt Realty Co. property and canal, designated as LOT 4, KIMBLE SUBDIVISION, on a survey by Hugh B. McCurdy, Jr., Surveyor, dated July 18, 1986, a certified copy of which is annexed to another act before a Notary, and according to said survey, said Lot No. 4 commences at a distance of 427 feet from the intersection of Lot No. 4 and canal and measures thence 73 feet front on Kimble Road, the same width in the rear, by a depth of 200 feet between equal and parallel lines.

The improvements thereon bear municipal no.: 110 KIMBLE STREET, BELLE CHASSE, LOUISIANA 70037.

Being the same property acquired by Scott Dean Martin from Jared James Martin, by virtue of a Donation Inter Vivos dated February 12, 2008, filed for record at COB 1175, folio 660, Parish of Plaquemines, State of Louisiana.

Property is sold, conveyed, mortgaged and accepted subject to any and all servitudes, easements, restrictions, covenants, conditions and any lease, grant exception or reservation of mineral or mineral rights, if any, appearing in the public records of said parish and state.

**MARITAL STATUS:**

Paula Lupe Fabre, ▓▓▓▓▓▓▓▓▓▓ a person of the full age of majority, resident of Jefferson Parish, Louisiana, and represented herein by Stephanie B. Reeves, her duly appointed Agent & Attorney-in-Fact, duly authorized by virtue of a Power of Attorney, an original of which is annexed hereto and made a part hereof, and here said Agent declared unto me, Notary, that her principal herein has been married but four times, first to Robert Reeves from whom she was divorced, second to Jerry Graves from whom she was divorced, third to Robert Lambert from whom she was divorced and fourth to Luis Rivarde from whom she was divorced and has not since remarried. Agent further declares that to the best of her knowledge, information and belief, her principal herein is alive and said procuration has not been revoked; whose mailing address is: 1048 Candlelight Drive, Marrero, LA 70072

## SPECIAL POWER OF ATTORNEY

### UNITED STATES OF AMERICA

STATE OF LOUISIANA

PARISH/COUNTY OF _Belle Chasse_

CITY OF _Luisiana_

DATE: _12-17-2014_

Before me, a Notary Public, duly commissioned and qualified in and for the above indicated State and Parish (County), and in the presence of the undersigned witnesses, personally came and appeared the hereinafter named and undersigned PRINCIPAL, who declared under oath that he is of legal age and his marital status is as hereinafter set forth, and further that he does by these presents make, name, ordain, constitute and appoint the hereinafter named AGENT and ATTORNEY-IN-FACT (hereinafter referred to as AGENT, of the full age of majority, to be his true and lawful AGENT, hereby giving and granting unto said AGENT full power and authority, for him, and in his name, place and stead, to do and perform all the things and acts specified herein and in the numbered paragraph(s) indicated or completed below.

PRINCIPAL further authorizes and empowers his/her said AGENT to do and perform any an every act, matter and thing whatsoever, as shall or may be requisite and necessary in order to effectuate the purposes for which this power of attorney is granted, as fully and with like effect as if PRINCIPAL had been personally present and had done any such thing, performed any such act and/or had signed all and any such document, deed, note, contract, application or other agreement, PRINCIPAL hereby ratifying and confirming any and all things done by his/her said AGENT and adopting them as his own act and deed.

PRINCIPAL further expressly stipulates that any ambiguities which may arise in the interpretation hereof shall be liberally construed so as to effectuate the purposes hereof and to validate all things done by AGENT. Whenever used herein, the singular number shall include the plural, and the masculine gender shall include all genders. Said AGENT shall also have full power of substitution and revocation, hereby ratifying and confirming and agreeing to ratify and confirm all and whatsoever the said Attorney shall lawfully do or cause to be done by virtue hereof.

The purpose for which this power of attorney is granted is:

I. ____ Applicable
    _X_ Not Applicable

To direct, instruct, authorize and permit AGENT to sell and deliver the hereinafter described real estate, and/or all of PRINCIPAL'S right, title and interest therein, with warranty of title and with subrogation of all actions of warranty, unto any person, firm or corporation or association, for such price and on such terms and conditions as AGENT may deem proper, to pay and discharge any and all charges, expenses and encumbrances in connection therewith, and to receive and receipt for the selling price.

II. _X_ Applicable
    ____ Not Applicable

To direct, instruct, authorize and permit AGENT to purchase the hereinafter described real estate for the price and sum of $240,000.00, in cash and $235,653.00 to be evidenced by PRINCIPAL'S promissory note and secured by vendor's lien and/or mortgage, in favor of GMFS, LLC, on such real estate.

III. _X_ Applicable
     ____ Not Applicable

To direct, instruct, authorize and permit AGENT to borrow, from any person, firm or corporation, specifically, GMFS, LLC, the total sum of $235,653.00, loan to be evidenced by PRINCIPAL'S promissory note and secured by vendor's lien and/or mortgage, in favor of GMFS, LLC, on the hereinafter described real estate, or PRINCIPAL'S undivided interest therein.

In the event that paragraphs II and/or III hereinabove shall be applicable, PRINCIPAL does hereby expressly authorize AGENT:

   a)  To execute the necessary sale and resale or act of mortgage to create a vendor's lien in favor of any building and loan association, and/or to execute any act of sale and/or mortgage, conventional mortgage, or any form of mortgage required to obtain mortgage loan insurance or loan guarantees from the Veterans Administration or Federal Housing Administration, on such form and on such terms and conditions as the lender shall require, the said instrument to contain all usual Louisiana security clauses, including by way of example, but not limited to, confession of judgment, waiver of appraisement, waiver of homestead exemption from seizure, and pact de non alienando.
   b)  To make, execute and deliver in PRINCIPAL'S name a promissory note in the amount of the credit portions of the purchase price or the amount of the loan, said note to be payable at such maturity and at such rate of interest and on such terms and conditions as AGENT shall deem proper. AGENT may increase or decrease the amount of the note, not to exceed ten (10%) percent.
   c)  In the event that any loan is obtained from a building and loan association, to subscribe to shares of stock in said association and to pledge same to secure the loan, and to comply with all of the provisions of the charter, by-laws, and rules and regulations of such building and loan association, and all other things as such building and loan association shall require.
   d)  To obligate PRINCIPAL jointly and in solido in the event that there are other borrowers or purchasers.

## Plaquemines Parish Recording Page

**Kim Turlich-Vaughan**
Clerk of Court
PO Box 40
Belle Chasse, LA 70037
(504) 297-5180

Received From :
RUTH RUHL, PC
12700 PARK CENTRAL DRIVE, SUITE 850
DALLAS, TX 75251

**First MORTGAGOR**
FABRE, PAULA L

**First MORTGAGEE**
GMFS LLC

Index Type : MORTGAGE        File # : 2017-00001424
Type of Document : MODIFICATION AGREEMENT

           **Book :** 708      **Page :** 494

Recording Pages :      8

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for
Plaquemines Parish, Louisiana

On (Recorded Date) : 04/19/2017

At (Recorded Time) : 12:09:35PM

                              CLERK OF COURT
                         KIM TURLICH-VAUGHAN
                        Parish of Plaquemines
          I certify that this is a true copy of the attached
Doc ID -               document that was filed for registry and
                   Recorded 04/19/2017 at 12:09:35
                   Recorded in Book 708 Page 494
                   File Number 2017-00001424

                      Deputy Clerk

Return To :

Do not Detach this Recording Page from Original Document

**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

_____[Space Above This Line For Recording Data]_____

Loan No.: ▉▉▉▉▉▉

| FHA Case No.: ▉▉▉▉▉▉ |

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this     9th     day of  March, 2017
between  Paula Lupe Fabre, an unmarried woman

("Borrower")

and  GMFS LLC

("Lender"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated
January 21st, 2015    , recorded January 22nd, 2015     , and recorded in Book/Liber 657          , Page 517        ,
Instrument No. 2015-00000263          , of the Official        Records of Plaquemines         Parish,  Louisiana
and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and
personal property described in the Security Instrument and defined therein as the "Property," located at
110 Kimble Street, Belle Chasse, Louisiana 70037

the real property described being set forth as follows:
SEE EXHIBIT "A"  ATTACHED HERETO AND MADE A PART HEREOF.

Loan No. ▮▮▮▮▮▮▮▮

    In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

    1.    As of January 1st, 2017    , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 196,792.97    , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

    2.    Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.625  %, from December 1st, 2016    . Borrower promises to make monthly payments of principal and interest of U.S. $ 897.48    , beginning on the 1st    day of January    , 2017  , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 3.625    % will remain in effect until principal and interest are paid in full. If on December 1st, 2046    , (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

    3.    If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

    4.    Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

    (a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    (b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

    5.    Borrower understands and agrees that:

    (a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

Loan No. ▬▬▬▬▬

    (c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

    (f)    Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

    Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

    By checking this box, Borrower also consents to being contacted by text messaging☐.

    6.    Whereupon said Note having been presented to me, Notary, was paraphed "Ne Varietur" by me for identification herewith and returned to Lender.

    7.    If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

    8.    Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds; and in such amounts, that are then required under this paragraph.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

LOUISIANA LOAN MODIFICATION AGREEMENT
(FNMA Modified Form 3179 1/01 (rev. 04/14))

Loan No. █████

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

    If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Loan No ████████

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

_____     _____ (Seal)
                    Date       Paula Lupe Fabre              —Borrower

                               SSN:  XXX-XX-1728

_____     _____ (Seal)
                    Date                                     —Borrower

                               SSN:

_____     _____ (Seal)
                    Date                                     —Borrower

                               SSN:

_____     _____ (Seal)
                    Date                                     —Borrower

                               SSN:

_____     _____ —Witness
Stephanie M. Bishop    —Witness   Kris Chopin

## BORROWER ACKNOWLEDGMENT

State of  Louisiana        §
                           §
County/Parish of  Jefferson §

On this  15th  day of  March  2017 , before me personally appeared
Paula Lupe Fabre
to me known to be the person (or persons) described in and who executed the foregoing instrument, and
acknowledged that he (or they) executed it as his (or their) free act and deed.

(Seal)  JASON J. MARKEY
        NOTARY PUBLIC          _____
   Parish of Jefferson, State of Louisiana    Signature
   Louisiana Notary Public Number 82239
   Louisiana State Bar Roll Number 29722    _____
      My Commission is for Life              Notary Public
                                             Title of Officer

LOUISIANA LOAN MODIFICATION AGREEMENT
(FNMA Modified Form 3179 1/01 (rev. 04/14))                    Page 5 of 6

Loan No ████████

GMFS LLC _____

–Lender

3-29-17

-Date

By: _____
    Francine Bryant
    Vice President and Assistant Secretary

Its: _____

_____
-Witness

_____
-Witness

## LENDER ACKNOWLEDGMENT

State of NJ §
County/Parish of Mercer §
§

On this 29 day of MArch 2017 , before me personally appeared FrAncine BryAnt to me personally known, who, being by me duly sworn (or affirmed) did say that he/she is the president (or other officer or agent of the corporation or association) of GMFS LLC

(describing said entity or association), and that the seal affixed to said instrument is the corporate seal of said entity (or association) and that the instrument was signed and sealed in behalf of said entity (or association) by authority of its Board of Directors (or trustees) and that FrAncine BryAnt acknowledged the instrument to be the free act and deed of said entity (or association).

(Seal)

_____
Signature

MAVIS G. WHITE
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires February 13, 2020
ID# 66926748

Notary Public
Title of Officer

ACKNOWLEDGMENT (LOUISIANA)

Page 6 of 6

**EXHIBIT "A"**

**LEGAL DESCRIPTION:**

ONE CERTAIN LOT OR PARCEL OF GROUND, together with all the buildings and improvements thereon, situated in the PARISH OF PLAQUEMINES, STATE OF LOUISIANA, in T 14 S, R 24 E, Section 2, bounded by Kimble Road, N.O. and L.C.R.R. (MP), now or formerly Hodge Hunt Realty Co. property and canal, designated as LOT 4, KIMBLE SUBDIVISION, on a survey by Hugh B. McCurdy, Jr., Surveyor, dated July 18, 1986, a certified copy of which is annexed to another act before a Notary, and according to said survey, said Lot No. 4 commences at a distance of 427 feet from the intersection of Lot No. 4 and canal and measures thence 73 feet front on Kimble Road, the same width in the rear, by a depth of 200 feet between equal and parallel lines.

The improvements thereon bear municipal no.: 110 KIMBLE STREET, BELLE CHASSE, LOUISIANA 70037.

Being the same property acquired by Scott Dean Martin from Jared James Martin, by virtue of a Donation Inter Vivos dated February 12, 2008, filed for record at COB 1175, folio 660, Parish of Plaquemines, State of Louisiana.

Property is sold, conveyed, mortgaged and accepted subject to any and all servitudes, easements, restrictions, covenants, conditions and any lease, grant exception or reservation of mineral or mineral rights, if any, appearing in the public records of said parish and state.

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE:                                      CASE NUMBER: 19-10415

PAULA FABRE                                 CHAPTER 7

DEBTORS                                     SECTION "A"

### AFFIDAVIT

Ami McKernan
_____, after being duly sworn, deposes and states:

That he/she is a proper representative of GMFS LLC, AS SERVICED BY SPECIALIZED

LOAN SERVICING LLC ("Secured Creditor"), and that he/she is personally familiar with the Note

herein sued upon, described as follows:

> Note dated January 21, 2015, in the original amount of $235,653.00
> with interest at the rate of 3.375% per annum from date until paid
> executed by Paula Fabre, the Debtor, of which Secured Creditor is
> the holder;

That in said Note the Debtor granted a Security Interest in the following property:

> ONE CERTAIN LOT OR PARCEL OF GROUND, together with all the
> buildings and improvements thereon, situated in the PARISH OF
> PLAQUEMINES, STATE OF LOUISIANA, in T 14 S, R 24 E, Section 2,
> bounded by Kimble Road, N.O. and L.C.R.R. (MP), now or formerly Hodge
> Hunt Realty Co. property and canal, designated as LOT 4, KIMBLE
> SUBDIVISON, on a survey by Hugh B. McCurdy, Jr., Surveyor, dated July
> 18, 1986, a certified copy of which is annexed to another act before a
> Notary, and according to said survey, said Lot No. 4 commences at a
> distance of 427 feet from the intersection of Lot No. 4 and canal and
> measures thence 73 feet front on Kimble Road, the same width in the rear,
> by a depth of 200 feet between equal and parallel lines.

> The improvements thereon bear municipal no.: 110 KIMBLE STREET,
> BELLE CHASSE, LOUISIANA 70037.

> Being the same property acquired by Scott Dean Martin from Jared James
> Martin, by virtue of a Donation Inter Vivos dated February 12, 2008, filed



for record at COB 1175, folio 660, Parish of Plaquemines, State of Louisiana.

Property is sold, conveyed, mortgaged and accepted subject to any and all servitudes, easements, restrictions, covenants, conditions and any lease, grant exception or reservation of mineral or mineral rights, if any, appearing in the public records of said parish and state.

That $228,007.17 is the outstanding balance under the Note as of March 5, 2019; and

That the Debtor's account is past due in the amount of $44,290.79.

MAR 1 9 2019

Ami McKernan

SWORN TO AND SUBSCRIBED BEFORE ME IN
THE COUNTY OF _Douglas_ STATE OF _Colorado_
THIS _19_ DAY OF MARCH, 2019.

NOTARY PUBLIC
MY COMMISSION EXPIRES: _10/01/2022_

SHARON LAWFIELD
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20184038795
MY COMMISSION EXPIRES 10/01/2022

2